1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 ███████████████████, a minor,    )   Case No. 3:12-cv-2444-GPC-MDD
   and ████████████████, her natural   )
12    guardian,                   )   **REDACTED ORDER:**

13                             )   **(1) GRANTING RENEWED**
              Plaintiffs,         )   **MOTION TO PROCEED IN**
14                             )   **FORMA PAUPERIS;**

15    v.                        )   **(2) DISMISSING FIRST**
                            )   **AMENDED COMPLAINT WITH**
16                             )   **PREJUDICE;**

17                             )   **(3) DENYING REMAINING**
   CALIFORNIA REGENTS SAN      )   **PENDING MOTIONS AS MOOT**
18    DIEGO STATE UNIVERSITY et al.,   )

19                             )
              Defendants.        )
20                             )

21 _____ )

22       On February 12, 2013, plaintiff ████████████ ("Ms. █████████") filed a first

23 amended complaint ("FAC") on behalf of herself and her minor daughter, █████████

24 █████████(together, "Plaintiffs").  (ECF Nos. 10, 15.)

25       Ms. █████████ filed the FAC after this Court instructed her to file amended

26 versions of her initial complaint, motion to proceed in forma pauperis ("IFP"), and

27 request for appointment of counsel.  (See ECF Nos. 5, 6.)

28       Upon review of the Amended Motion to Proceed IFP, (ECF Nos. 12, 17), the

Court determined the Motion was moot because Plaintiff had paid the required filing fee and did not request service of process by the U.S. Marshal.  (See ECF Nos. 31, 32.)  The Court thus denied the Amended Motion to Proceed IFP.  (Id.)

Upon review of the Amended Motion for Appointment of Counsel, (ECF Nos. 13, 16), the Court determined appointment of counsel was not appropriate because the Amended Motion to Proceed IFP had been denied and because the Court determined Plaintiffs had little to no likelihood of success on the merits given the fantastical nature of Plaintiffs' allegations.  (ECF Nos. 31, 32.)  The Court thus denied the Amended Motion for Appointment of Counsel.  (Id.)

The Court further noted that "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer."  (Id. (citing Johns v. Cnty of San Diego, 114 F.3d 874, 877-78 (9th Cir. 1997).)  The Court thus gave Ms.██████████ until June 7, 2013, to retain counsel or face dismissal of the claims brought on behalf of Daughter.  (ECF Nos. 31, 32 at 4.)

On May 6, 2013, defendant County of San Diego ("County") filed a motion to dismiss the FAC.  (ECF Nos. 19, 29.)  The Court set the County's Motion to Dismiss for a hearing on September 6, 2013.  On May 28, 2013, defendants La Mesa-Spring Valley School District and John Parsons also filed a motion to dismiss the FAC, which the Court set for a hearing on September 20, 2013.  (ECF Nos. 34, 35.)  On July 25, 2013, defendant Wendy Belger (erroneously sued as "Wendy TBD") joined the County's Motion to Dismiss.  (ECF No. 54.)  Thereafter, on August 6, 2013, defendants David Morse & Associates, Bill McDaniel, and Julie McDaniel filed a motion to dismiss the FAC, which the Court also set for a hearing on September 20, 2013.  (ECF No. 56.)

On June 11, 2013, Plaintiffs filed several motions, including: (1) a renewed motion to proceed IFP to obtain U.S. Marshal service; (2) an alternative request for an extension of time to serve the FAC; (3) a request for an extension of time to retain counsel for Ms.██████████'s daughter; (4) a motion for leave to file a second amended

complaint; (5) a motion to disqualify judge; (6) a renewed motion for appointment of counsel; (7) and a motion for extension of time to respond to the County's Motion to Dismiss. (ECF Nos. 40, 43, 44, 45, 46, 47, 48, 49.)

On July 18, 2013, the Count filed an opposition to Plaintiffs' Motion for an Extension of Time to Respond to the County's Motion to Dismiss, noting Plaintiffs had not explained why they were unable to timely respond to the County's Motion or require a continuance of the September 6, 2013 hearing that, at the time, was seven weeks away. (ECF Nos. 52, 53.) On August 20, 2013, Plaintiffs filed another motion for extension of time to respond to the County's Motion to Dismiss. (ECF Nos. 57, 59.)

## 1. Motion to Disqualify Judge

Plaintiffs move to disqualify the undersigned judge because, in denying Plaintiffs' Amended Motion for Appointment of Counsel, the Court relied on language from Plaintiffs' FAC that the County also relied on in its Motion to Dismiss.

Plaintiffs note that both this Court's order and the County's Motion to Dismiss quote Plaintiffs' allegations regarding "multidimensional sexual experience[s]"; the Church of Scientology's practice of "mind f**king"; "cycle[s] of energy vampirism" in which defendants engage in a "predator[y] or parasitic lifestyle or demonic possession," dependent upon locating "human hosts for their survival."

Plaintiffs argues "the defense has taken selected words or phrases from various areas of the plaintiff's Amended Complaint, out of context and strung them together in a couple of sentences and misconstrued the plaintiff's intended meaning." Plaintiffs then provide an explanation of the "selected words or phrases," relying on a book called, Psychic Vampires: Protection From Energy Predators & Parasites, written by Joe H. Slate, Ph.D., along with another book entitled, Sacred Hunger: The Vampire in Myth and Reality, written by Michelle Belanger.

Plaintiffs argue the County failed to diligently investigate Plaintiffs' allegations before asserting Plaintiffs' claims were frivolous. Plaintiffs thus argue the undersigned

should recuse himself because "plaintiffs have used this expert supported phrase to describe harmful experience and because the Court[']s reliance on this phrase as depicted by the defendant indicates a bias against the plaintiffs."

Plaintiffs claim "the Court has accepted obvious defense strategies from the [County]," including a defamatory attack on Ms. ███████'s credibility. Plaintiffs claim the Court disregarded the Plaintiffs' "references to expert support for her allegations, [and] appears to have been intimidated by mere defensive tactics." Plaintiffs further claim that the County's assertion that "it appears evident that the plaintiff who signed and presumably prepared the Complaint, suffers from an undiagnosed mental disorder" is a defensive tactic "meant to shed doubt on the plaintiff's credibility, [and] [i]mproperly influence the Court to hasten dismissal before any discovery can be conducted." Plaintiffs imply that the Court has shown bias against Plaintiffs by allowing the County to file a motion that contains such statements.

Plaintiffs further claim the Court's warning of dismissal if counsel was not obtained for Ms. ███████'s daughter showed bias because it came soon after the County's assertion that it appeared the author of Plaintiffs' FAC suffered from an undiagnosed mental disorder.

In sum, Plaintiffs claim the Court has shown bias against them "by allowing the defendants['] defense strategies to influence [the Court] into taking action to ma[k]e the determination that the plaintiffs claim is frivolous."

Recusal of a federal judge is governed by 28 U.S.C. §§ 144 and 145. A judge must "proceed no further" in a case if he "has a personal bias or prejudice" against or in favor of any party. 28 U.S.C. § 144. A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" and "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

"Under both statutes, recusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Yagman v. Republic Ins., 987 F.2d 622, 626 (9th Cir.1993)

(quotation omitted). A "reasonable person" is defined as a "well-informed, thoughtful observer," as opposed to a "hypersensitive or unduly suspicious person." <u>Clemens v. United States Dist. Ct. for the Cent. Dist. of Cal.</u>, 428 F.3d 1175, 1178 (9th Cir.2005) (quotation & citation omitted). Further, under § 455(b)(1), a judge must recuse himself when he harbors actual bias. <u>United States v. Holland</u>, 519 F.3d 909, 915 (9th Cir. 2008).

Ordinarily, the party must allege "facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an <u>extrajudicial source</u>." <u>United States v. Sibla</u>, 624 F.2d 864, 868 (9th Cir.1980) (emphasis added). This "generally requires as the basis for recusal something other than rulings, opinions formed[,] or statements made by the judge during the course of the trial." <u>Holland</u>, 519 F.3d at 913-14. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).

"[I]n the absence of a legitimate reason to recuse himself, a judge should participate in cases assigned." <u>Holland</u>, 519 F.3d at 912 (quotation & citation omitted).

First, the undersigned harbors no actual bias for or against any party to this action. Second, the Court finds no reasonable person, as defined in <u>Clemens</u>, would conclude the Court's prior order demonstrates a bias against Plaintiffs. It is of no moment that the Court relied on the same allegations that the County relied on in determining whether Plaintiffs' allegations bore any likelihood of success on the merits, as it is common for courts and parties to rely on key allegations throughout the course of a given case—especially, as here, where the key allegations form the crux of a complaint. Finally, Plaintiffs have presented no evidence of bias "that stems from an extrajudicial source." That is, Plaintiffs have provided no information derived from a source outside of these proceedings to demonstrate the undersigned is biased against Plaintiffs. Accordingly, the Court must deny Plaintiffs' "Motion to Disqualify Judge."

**2.    Renewed Motion to Proceed IFP**

On October 9, 2012, Plaintiffs paid the required $350.00 filing fee. (<u>See</u> ECF

No. 1.) On that basis, the Court denied Plaintiffs' Amended Motion to Proceed IFP as moot. (ECF Nos. 31, 32.) Plaintiffs now renew their request to proceed IFP in order to obtain marshal service on the as of yet unserved defendants. (ECF Nos. 40, 43.)

### a. IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $350.00. <u>See</u> 28 U.S.C. § 1915(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if the plaintiff is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). <u>See</u> <u>Rodriguez v. Cook</u>, 169 F.3d 1176, 1177 (9th Cir. 1999).

Ms. █████████ declares she is currently unemployed, and that she was last employed in April 2008. (ECF Nos. 12, 17.) Ms. █████████ states that, in November 2012, she received a lump sum of approximately $11,000 when she cashed out her pension. (<u>Id.</u>) She states that she receives auxiliary social security disability payments for the care of her daughter. (<u>Id.</u>) Ms. █████████ states she has several checking and savings accounts that, at the time of her declaration, had balances totaling approximately $7,700. (<u>Id.</u>) She further states that she has an educational IRA in her minor daughter's name with a balance of about $11,500. (<u>Id.</u>)

Ms. █████████ asserts she owns four vehicles: an inoperable 1974 BMW, a financed 1978 Mercedes with $800 owed, a financed 2007 Sebring with about $3,100 owed, and a financed 2004 GMC with about $6,200 owed. She states that her wedding ring set is worth about $5,000. She states that she owns a single family home with monthly mortgage payments of $1,207.88, and that she pays an HOA fee of $174 per month.

Ms. █████████ states her daughter and her husband are her dependents and that she contributes about $180 a month to each of them. She states she owes approximately $121,700 in student loans. She states that her day-to-day expenses are provided by her husband's retirement and disability benefits. In total, the Court finds Ms. █████████'s debts and expenses far exceed her assets and income and that she has

3:12-cv-2444-GPC-MDD

therefore demonstrated the inability to pay the required filing fee. Accordingly, the Court will grant Plaintiffs' renewed motion to proceed IFP.

### b.    Sua Sponte Dismissal

Any complaint filed by a person proceeding IFP is subject to sua sponte dismissal by the Court to the extent it contains claims which are "frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir.2001) (per curiam) ("the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").[1]

A complaint will be considered frivolous, and therefore subject to dismissal under Section 1915(e)(2)(B)(i), "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); see also Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). The determination of whether a complaint is frivolous must be weighted in favor of the plaintiff. Denton, 504 U.S. at 32. Indeed, a court cannot properly dismiss an action commenced by an in-forma-pauperis applicant if the facts alleged in the complaint are merely "unlikely." Id. at 33. A court, however, may properly dismiss a complaint if the court finds the allegations to be "fanciful," "fantastic," or "delusional," or if the allegations "rise to the level of the irrational or the wholly incredible." Id. (citing Neitzke, 490 U.S. at 325, 328). This standard applies whether or not judicially noticeable facts exist to contradict the frivolous allegations. Id. If a claim is classified as frivolous, no reason exists to grant leave to amend because the underlying action of a frivolous claim, by definition, has no merit. Lopez, 203 F.3d at 1127 n.8.

---

[1] See also  Velarde v. Heartland Christian Homeschool Ctr., Inc., 2013 WL 244555 (S.D. Cal. Jan. 22, 2013) (undertaking § 1915(e)(2)(B) analysis where plaintiff paid the filing fee but requested to proceed IFP in order to obtain marshal service); Powell v. Federal Home Loan Mortg. Corp., 2012 WL 2261189 (D. Ariz. June 15, 2012) (same).

Here, Plaintiffs allege defendants violated their First, Thirteenth, Eighth, and Fourteenth Amendment rights by subjecting them to gender, religious, and racial discrimination.

To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the federal Constitution or statutory law, and (2) that the deprivation was committed by a person acting under color of state law. <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

Ms.███████ alleges she attended San Diego State University from August 1981 through August 1986 and that, during that time, defendant Gene Lamke ("Lamke") discriminated against her via a "multidimensional sexual experience," in which he told "everyone in the class have a nice weekend but not [Ms.███████]." (ECF Nos. 10, 14 at 2.) Ms.███████ alleges she therefore "experienced a mental breakdown while sitting in class." (<u>Id.</u>)

Ms.███████ alleges that, in the spring of 2003, "Lamke was present the morning after the plaintiff awoke from a Sea World sleep over . . . and indicated to [other children there] that there was something wrong with [Plaintiffs]," thus causing Ms.███████ to become fearful for her daughter's safety. (<u>Id.</u> at 3.) Plaintiffs allege this "discrimination [was] related to gender, religion, and race," and that Plaintiffs' "First, Thirteenth, Fourteenth Amendments have been violated." (<u>Id.</u>) Plaintiffs allege Lamke "misused research, scientific methods or religious practices to cause harm to [Plaintiffs]," and that "Plaintiffs have suffered a series [of] repetitive multidimensional sexual experiences causing an interference with their natural development and violation to their civil rights." (<u>Id.</u>)

Plaintiffs assert that "sheriff personnel are participating in the discrimination scheme," claiming that because "they are the law enforcement and the State's muscle, it follows that they will take up interests identified to them by State Actors, like Lamke." (<u>Id.</u>) Plaintiffs claim "the State has secured [sheriff personnel's] cooperation by use of their position and by the misuse of religious practices, science or research

methods." (Id.)

Ms.████████ provides that she began having problems with sheriff's department personnel in 2003, alleging "they intentionally had multidimensional sex with [Plaintiffs] and drained them of vital energy." (Id. at 3-4.) Plaintiffs allege that sheriff's department personnel's "dependency on victims allows them to be used by the State defendant(s) to target plaintiff with discrimination that caused serious harm leading to imminent death." (Id. at 4.)

Ms.████████ elaborates that Lamke may be considered a social scientist and that "his discriminatory scheme that provides him with sexual gratification likely makes him a sexual psychopath." (Id.) She asserts Lamke's "state position allows him to gain assistance by trust and his ability to misuse religious practices, science and research," including a "misuse of research regarding Maslow's hierarchy of needs." (Id.) Ms.████████ asserts that "law enforcement would be stuck at the bottom level of biological needs of feeding and with the full State Authority." (Id.) Ms.████████ asserts "this is a condition called psychic vampirism or involves a demon spirit called incubus," and "could be the result of improper training and supervision." (Id.) Ms.████████claims this is supported by the fact that she "reported this theory to the sheriffs in June 2010, July 2011, and February 2012 and about May of 2012 without any indication that they will investigate the theory even though it has a high degree of risk of harm," including the "improper use of a spirit that has sex with female victims while they sleep and drain them of vital energy." (Id.) Ms.████████ claims "[t]his misuse of State Action, religious practices, science and research not only victimizes [Plaintiffs] but also the law enforcement at the same time they are trapped in a cycle of energy vampirism, predatorial and parasitic lifestyle or demonic possession." (Id. at 5.) Ms.████████asserts "[t]his means that they are depended upon locating human hosts for their survival." (Id.)

Plaintiffs claim "the defendant conspired with others to violate numerous civil rights on a continuing basis," using what the Church of Scientology calls a

"communication highway," which is a "telepathic way to communicate." (Id.)

Plaintiffs allege Lamke used "Church of Scientology or other religious methods to violate [Plaintiffs'] civil rights." (Id.) Ms.███████ claims she and her daughter "were exploited with multidimensional sexual experiences," which the Church of Scientology calls "mind f**king." (Id.)

Ms.███████ claims the aforementioned "communication highway" was used "to cause segregation to the plaintiffs" and "to cause defamation of character, confusion, improper guidance and loss of economic rights, loss of right to associate, to gain knowledge." (Id. at 6.) Ms.███████ claims "[t]he defendants have misused research by obtaining cooperation by . . . using the power of suggestion and coupling it with repetition." (Id.)

Ms.███████ claims "[t]he defendants' discrimination is with the intent to annihilate," claiming "the discriminatory method is not only to purpose death upon the plaintiffs but also to their descendants." (Id.) Ms.███████ asserts the "Church of Scientology believes in accessing past and present life experiences," and that "[r]esearch has reveal[ed] methods for time travel." (Id.) She asserts the "Church of Scientology's term 'thetan being' means the human spirt," and that this "thetan being can be accessed and their life detrimentally affected by relocation or elimination." (Id.) Ms.███████ contends Lamke practiced such a method of "relocation or elimination" of her thetan being while she was a student in his department. (Id.) Ms.███████ claims "Defendant has advocated the creation of the future," which is a process the Church of Scientology calls "postulation." (Id.) Ms.███████ asserts that, through postulation, "defendant misused religious practices, science or research," and that the "intentional taking of all the unborn 'theta beings' . . . from [Ms.███████] prevents [her] from having descendants." (Id. at 7.)

Ms.███████ asserts she "has been able to recall past life experiences that have rights taken away including the memory of three children, the taking of all her descendants, wealth and loss of economic rights and privileges, loss of relationships

3:12-cv-2444-GPC-MDD

with family, friends and associations, lack of travel, lack of privacy, other fulfilling and rewarding skills like being a fast reader." (Id.)

Ms.████████alleges "the discrimination is to prevent her free speech and other First [A]mendment rights." (Id.) She alleges two state licenses have been denied as a result of prior restraint. (Id.) The first license was a California license to practice law, which Plaintiff failed to receive after failing the bar exam. (Id.) Ms.████████ claims she failed the bar exam because, about ten days prior to the exam, her daughter suffered a "multidimensional sexual battery which [Ms.████████] contends was a state authorized gang rape by sheriff deputies." (Id.) She claims the denial of her law license is a prior restraint in violation of the First Amendment. (Id. at 16-17.)

Ms.████████elaborates that "Defendant arranged for three specifically placed multidimensional sexual experiences for [her daughter] with the intent to alter her natural development for the purpose of her sexual exploitation." (Id. at 8.) Ms.████████asserts the first incident occurred in April or May 2000 and involved only Lamke, the second "was about June to August 2003" and involved "Defendant Dixon and numerous of his associates," and the third was on July 16, 2011 and involved several sheriff deputies. (Id.) Ms.████████further claims there were "repetitious and on-going batteries . . . against [Plaintiffs'] will and during unconscious sleep." (Id.) Ms.████████thus asserts her daughter's Thirteenth Amendment rights were violated because "these batteries caused a loss of vital energy to the Daughter and provided for sexual gratification to the defendants, they should be considered involuntary sexual servitude." (Id.) Ms.████████ further contends that, "as a State Authorized rape of the daughter," such action constitutes a violation of the daughter's Eighth Amendment right to be free from cruel and unusual punishment. (Id.) Ms.████████ asserts her daughter "cannot escape the confines the Defendant has placed in her dreams," and that "the deprivation of sleep and loss of vital energy is torture." (Id.)

Ms.████████ then goes on to describe how each of the remaining defendants were involved in the alleged scheme to discriminate against Ms.████████ and her

daughter.

Ms. █████████ asserts defendant Jesse Dixon ("Dixon") is, like Lamke, a faculty member at San Diego State University, and that Dixon discriminated against Ms. █████████ by changing the answers on her exam to prevent her from obtaining a license to be a recreational therapist. (Id. at 11-12.) Ms. █████████ asserts Dixon spoke of Church of Scientology theories in class and discussed "States [sic] requested research of answering the question of what does it take to make one commit suicide," and Ms. █████████ believes she is the subject of such research. (Id. at 12.) Ms. █████████ asserts Dixon led the "multidimensional battery that took [her] line of descendants," and that he also led the "multidimensional sexual assault on [her daughter] in 2003," which involved "him training her a[] little at a time to perform sexually and each time she conformed, he rewarded her with a sucker." (Id.) Ms. █████████ asserts "this was a state authorized gang rape involving numerous of his associates," and that her daughter's thetan being "did not survive the attack as part of the annihilation." (Id.)

Ms. █████████ asserts her daughter experienced the second "multidimensional sexual battery" from early July 2003 to mid-August 2003, which "started with significant trust building and training and extended over numerous nights," ending "with the exploitation of [Ms. █████████'s] daughter by numerous associates of the defendant." (Id. at 13.) Ms. █████████ asserts she also "suffered from multidimensional batteries causing her to suffer a serious depletion of vital energy and experience a paralysis and watched helplessly and was unable to protect" her daughter. (Id.)

Ms. █████████ alleges defendant Sonya Wright ("Wright") was also employed at San Diego State University and that she "improperly hired, provided inadequate supervision and inadequate training to the defendants," and that she failed to take action "to prevent the violations suffered by the plaintiffs." (Id. at 14.)

Ms. █████████ asserts defendant William Gore ("Gore") is the Sheriff of San Diego County and that he "knew or should have known of the condition of the sheriff

department including improper hiring, inadequate supervision and inadequate training leading to the violation of the plaintiffs' civil rights." (Id. at 15.)  Ms.███████ asserts that "sheriff personnel claim state authority for conduct and refuse to investigate" Ms.██████'s theory that "sheriff personnel are involved in the multidimensional sexual assault" on Plaintiffs, despite the fact that Ms.███████ has provided the sheriff's department with Slate's book on psychic vampires. (Id. at 16.) Ms.███████ asserts that the defendant professors, Lamke and Dixon, are directing sheriff's personnel in the alleged annihilation scheme. (Id.)

Ms.██████ asserts defendant Diane Jacobs "is employed as Board of Directors," and that she "knew or should have known of the condition of the sheriff department," and failed to take corrective action. (Id. at 17.)

Ms.█████ claims defendant Al Guerrin ("Guerrin") "is employed as Assistant Sheriff," and that "[h]e was the Captain of the Lemon Grove Sheriff Department in 2004 when [Ms.██████] visited him . . . at the same time as the severe 2003 multidimensional sexual experiences to [Ms.██████'s daughter]." (Id. at 18.)  Ms.██████ claims that, prior to this visit, she "experienced multidimensional batteries of which some were sexual and others were severe beatings." (Id.)  She claims Guerrin "attempted to use the multidimensional sexual batteries against [her] twice in his presence." (Id.)  Ms.██████ further claims Guerrin also "improperly supervised, inadequately hired and inadequately trained the sheriff personnel under his authority," and failed to take corrective action. (Id.)

Ms.██████ asserts defendants Sergeant Bolwerk ("Bolwerk"), Sergeant Yamamoto ("Yamamoto"), Sergeant Kirk Thomson ("Thomson"), Lieutenant Finley ("Finley"), and Deputy Willis ("Willis") are all employees of the sheriff's department and that they participated in the "multidimensional sexual batteries and beatings" against Plaintiffs and/or failed to take corrective action. (Id. at 19-22.)

Ms.██████ claims defendant Lieutenant Michael Hernandez ("Hernandez") is also employed by the sheriff's department and that he participated in the

discrimination against Plaintiffs by failing to take action when Ms.███████ advised him that Plaintiffs' neighbor—defendant sheriff's deputy Donna Duncan ("Duncan")—had taken an inappropriate interest in Ms.███████'s daughter and that Ms.██████ herself was experiencing a drain in vital energy. (Id. at 22-23.) Ms.███████ asserts Hernandez retaliated against her "by sending a deputy and [PERT] nurse to [Ms.███████'s] home." (Id. at 23.)

Ms.███████ asserts defendant Sergeant Rose ("Rose") is also employed by the sheriff's department and that she supervised Duncan. (Id. at 24.) Ms.███████ asserts that, in June 2010, she complained to Rose that Duncan had an inappropriate interest in Ms.███████'s daughter and that both she and her daughter were "suffering interference with their bodily integrity." (Id.) Ms.███████ explained her theory regarding the "drain of her vital energy while she was sleeping and forwarded her a copy of [the Slate book on psychic vampires]." (Id.) Ms.███████ claims Rose, in turn, retaliated against Ms.███████ "by sending a deputy and [PERT] nurse to [Ms.███████'s] home." (Id.)

Ms.███████ claims "Defendant Detective with the PERT nurse" is also employed by the sheriff's department and that he participated in the discrimination against Plaintiffs by going to Plaintiffs' home several days after Ms.███████ reported Duncan's alleged inappropriate interest in Ms.███████'s daughter to Hernandez and Rose. (Id. at 25.)

Ms.███████ claims defendant Wendy TBD ("Wendy") was the PERT nurse who accompanied the aforementioned deputy. (Id. at 35.) Ms.███████ claims "defendant used intimidation to threaten [Ms.███████] with incarceration as retaliation and to violate her civil rights." (Id.)

As mentioned above, Ms.███████ alleges Duncan is also deputy for the sheriff's department, and also that she "lives a couple doors down from" Plaintiffs. (Id. at 26.) Ms.███████ asserts she recognized Duncan's voice "as being the deputy that arranged the multidimensional gang rape" of Ms.███████'s daughter, and that

Duncan "participated in repetitive assaults and beatings on [Ms. ████████]," which "should be considered involuntary servitude." (Id.) Ms. ████████ asserts Duncan also "arranged for a hearing devi[c]e to be placed inside [Plaintiffs'] home by sending . . . a salesman for a home security system." (Id.)

Ms. ████████ claims defendant Marilyn TBD ("Marilyn") is also employed by the sheriff's department and that she participated in the alleged discrimination scheme. (Id. at 36-37.) Ms. ████████ asserts Marilyn advised Ms. ████████ that the "sheriffs were hiring for court deputies," and that, in January 2011, Marilyn stopped her vehicle in front of Ms. ████████'s home to speak with Duncan. (Id. at 37.) Ms. ████████ asserts that, when she looked out the window, Duncan glared at her. (Id.)

Ms. ████████ claims defendant Sergeant Wallace ("Wallace") is also an employee of the sheriff's department and that he responded to Ms. ████████'s 911 call regarding the alleged July 16, 2011 multidimensional attack on Ms. ████████'s daughter, and that Wallace failed to fully investigate Ms. ████████'s claims. (Id. at 33.)

Ms. ████████ alleges defendant Deputy Bucher ("Bucher") is also employed by the sheriff's department and that he responded to Ms. ████████'s call in May 2012 regarding her concern that Duncan was continuing to cause multidimensional attacks against Ms. ████████'s daughter. (Id. at 34.) Ms. ████████ claims that Bucher said he could handle the investigation but would not return messages. (Id.)

Moving on to the remaining non-sheriff personnel defendants, Ms. ████████ asserts that defendant Bill McDaniel is a manager that works for defendant David Morse and Associates, is a Church of Scientology member, and "has misused religious practices, science or research violating Plaintiffs' civil rights." (Id. at 27.) Ms. ████████ asserts Bill McDaniel "was so encouraged, coerced or forced by the state defendants that their conduct equates to state action against [Plaintiffs] by participating" in Lamke and Dixon's discrimination scheme. (Id.) Ms. ████████ asserts that, "by using the 'communication highway' Defendant misuse[d] religious

15

practices, science or research to conduct defamation of character of [Ms.██████████] resulting in segregation, economic hardship and deprivation of rights.  (Id. at 28.)

Ms.██████████ asserts Julie McDaniel is an office manager at David Morse and Associates and is also a Church of Scientology member.  (Id.)  Ms.██████████ claims Julie McDaniel gave Ms.██████████ religious books concerning the Church of Scientology, "showed disapproval that [Ms.██████████] could not make a better effort to read them," and also participated in the alleged discrimination scheme.  (Id. at 29.)

Ms.██████████ claims defendant Skip Williams ("Williams") is an "Investment Representative" that worked with Ms.██████████ and that he invited and took her to the Church of Scientology.  (Id. at 30.)  Ms.██████████ asserts Williams violated numerous civil rights by using the "communication highway."  (Id.)

Ms.██████████ claims defendants John Parson ("Parson") and Mr. Strickland ("Strickland") were employed as principal and teacher, respectively, at the daughter's school.  (Id. at 31-33.)  Ms.██████████ claims Parson and Strickland discriminated against Plaintiffs by failing to take appropriate action in response to Ms.██████████'s daughter being bullied at school.  (Id.)

Plaintiffs contend "the Sexual Psychopath in Institutions of Higher Learning statute is unconstitutional because the states valid purpose cannot be achieved," because "[i]t sweeps too broadly or too narrowly to be effective . . . is vague," and "is irrational."  (Id. at 37-38.)  In short, Plaintiffs take issue with the unidentified statute because it requires "the removal of sexual psychopath only if they are convicted."  (Id. at 38.)

Plaintiffs conclude their FAC with a prayer for "$4,000,000 to include all remedies available under the law."  (Id. at 40.)

Considering Plaintiffs' entire FAC, as set forth above, the Court finds Plaintiffs' allegations lack an arguable basis in fact.  See Neitzke, 490 U.S. at 325.  At the core of Plaintiffs' allegations is a theory that San Diego State University faculty used psychic means to orchestrate a scheme involving sheriff's department personnel, Ms.

16

1 ████████'s former colleagues, and the Church of Scientology to destroy the lives of

2 Ms.████████ and her daughter. Plaintiffs' allegations rest on "psychic vampirism";

3 a telepathic "communication highway"; psychic "multidimensional" attacks; psychic

4 "mind f**king"; and demonic possession—all used to obliterate Plaintiffs' "thetan

5 beings" or human spirits and to drain them of their "vital energy." Notwithstanding

6 Plaintiffs' reliance on Slate's book about "psychic vampirism" and terms used by the

7 Church of Scientology, the Court finds these allegations to be "fanciful," "fantastical,"

8 or both. See id.

9     Even assuming there were a factual basis for Plaintiffs' allegations, Plaintiffs

10 have not provided any legal basis on which to sue Defendants for engaging in such a

11 scheme. Plaintiffs assert Defendants' actions violated their First, Thirteenth, Eighth,

12 and Fourteenth Amendment rights by subjecting them to gender, religious, and racial

13 discrimination. Plaintiffs have provided no authority, and the Court has found no

14 authority, however, that would allow a plaintiff to recover under these amendments for

15 being subjected to such a scheme. The Court thus finds Plaintiffs' allegations lack an

16 arguable basis in law. See Neitzke, 490 U.S. at 325.

17     In sum, the Court finds Plaintiffs' allegations are frivolous for purposes of §

18 1915(e)(2)(B)(i) and must therefore dismiss Plaintiffs' FAC. Further, because a

19 frivolous claim, by definition, has no merit, the Court will dismiss Plaintiffs' FAC with

20 prejudice. See Lopez, 203 F.3d at 1127 n.8.

21     For the foregoing reasons, **IT IS HEREBY ORDERED** that:

22     1.    Plaintiffs' Motion to Disqualify Judge, (ECF Nos. 40, 47), is **DENIED**;

23     2.    Plaintiffs' Renewed Motion to Proceed in Forma Pauperis, (ECF Nos. 40,

24           43), is **GRANTED**;

25     3.    Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), Plaintiffs' FAC is **DISMISSED**

26           **WITH PREJUDICE**, and the Clerk of Court is directed to enter

27           **JUDGMENT** accordingly;

28     4.    All remaining motions that remain pending are **DENIED AS MOOT**;

3:12-cv-2444-GPC-MDD

5.    The hearings currently set on September 6 and 20, 2013, are **VACATED**;

6.    The Clerk of Court is directed to **TERMINATE** this case; and

7.    The Clerk of Court is directed to **FILE UNDER SEAL** this Order in accordance with the procedures set forth in the Order at ECF Nos. 5, 6.

DATED:  September 4, 2013

HON. GONZALO P. CURIEL
United States District Judge